James W. Fisher, doing business as General Manufacturing, appellant, v. Beebe & Runyan Furniture Company et al., appellees, Shafar Industries, Incorporated, intervener-appellee.

263 N. W. 2d 826

Filed March 22, 1978. No. 41191.

Tony L. Fugit and Carol F. Rossiter of Fugit Law Offices, for appellant.

D. C. Bradford of Bradford & Coenen, for appellee Beebe & Runyan Furniture Co.

Heard before White, C. J., Spencer, Boslaugh, McCown, Clinton, and White, JJ.

White, C. J.

This is an action for breach of contract. In its petition the plaintiff alleged that it had agreed to manufacture, and that defendant Beebe & Runyan Furniture Company had agreed to pay for, restaurant booths for ultimate use by Johnny's American Inn, Inc. The plaintiff sought recovery of the unpaid balance on the contract and on various other charges and expenditures alleged due him by the defendant. Defendant, Beebe & Runyan Furniture Company, filed a cross-petition alleging that the restaurant booths provided by the plaintiff were defective and

unfit for the purpose for which they were intended. The defendant Johnny's American Inn, Inc. (hereinafter referred to J.A.I.), was allowed to join the action as an additional defendant and cross-petitioner. In its answer and cross-petition, it alleged that at all times material to the action, the defendant Beebe & Runyan Furniture Company acted as its agent and that this agency was known and disclosed to the plaintiff. Shafar Industries, Incorporated, filed a petition in intervention alleging that it had an interest in the litigation.

The case was tried to the court without a jury. On June 10, 1976, the District Court entered its judgment, on the issues raised in the action, as follows: That Beebe & Runyan Furniture Company should be dismissed as a party defendant; that plaintiff should recover from the defendant J.A.I. the sum of $2,981; that the intervener should recover from the defendant J.A.I. the sum of $6,318; that the cross-petition of defendant J.A.I., concerning alleged breaches of implied warranties of merchantability and fitness, should be dismissed; and that the booths being held by the intervener were the property of the defendant J.A.I. Plaintiff filed a motion for a new trial, which was overruled, and now appeals. We reverse the judgment of the District Court.

On appeal the plaintiff contends that the District Court erred in dismissing the defendant Beebe & Runyan Furniture Company from the action and in its assessment of damages. While the District Court did not specify in its decision its grounds for dismissing the defendant, Beebe & Runyan Furniture Company, from the action, it is obviously based upon the pleadings and the theory on which the case was tried, and it must have concluded that at all times relevant in this action Beebe & Runyan Furniture Company acted as the agent for the defendant J.A.I. and that this agency was known and disclosed to the plaintiff.

A finding of fact by a court of law where the jury has been waived has the effect of a verdict by a jury and will not be set aside on appeal unless clearly wrong. Crane Co. v. Roberts Supply Co., 196 Neb. 67, 241 N. W. 2d 516 (1976).

"It is an elementary proposition of law that when a judgment is clearly against the weight of the evidence it should be set aside." Nebraska Mutual Ins. Co. v. Borden, 132 Neb. 656, 272 N. W. 767 (1937).

"If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone and the agent cannot be held liable thereon." Bury v. Action Enterprises, Inc., 197 Neb. 38, 246 N. W. 2d 724 (1976). The question on appeal is whether the defendant Beebe & Runyan Furniture Company acted as a known agent for a disclosed principal, the defendant J.A.I., and is thus not liable on the contract. The trial court determined that it had. We can only unseat this determination by the trial court if it is clearly wrong. We believe that it is.

James Fisher, the plaintiff, stated that he had done business with Beebe & Runyan Furniture Company (hereinafter referred to as Beebe), on several occasions prior to the transaction in question. He would deal with Jim or John Sandstedt. In the summer of 1969, Jim Sandstedt approached him concerning booths which Beebe was going to provide for J.A.I. for their "Here's Johnny" restaurants. Sandstedt asked him if he was interested in providing these and Fisher indicated that he was. Sandstedt subsequently introduced him to Henry Davis, director of equipment for J.A.I. A number of meetings followed between Fisher, Davis, Sandstedt, Roger Owens, a fiberglass manufacturer, and others. The concept desired for the restaurants was discussed and eventually a design formulated and approved.

Exhibit 2 is a purchase order for these booths dated November 8, 1969. The letterhead on the pur-

chase order is that of Beebe and it is designated "Purchase Order No. 196." It is signed by Henry Davis who is designated as "Buyer Agent."

Fisher testified that he considered the contract to be with Beebe; that no one from J.A.I. offered to contract with him; and that he would not have contracted with J.A.I. He stated that he contracted with Beebe because from past business dealings he knew it to be a sound and reliable firm. He testified that he knew Davis was an employee of J.A.I. but was told by Sandstedt and Davis that Davis was authorized to enter into a contract for Beebe.

Fisher testified that he sent all his bills to Beebe. Exhibits 20, 21, 90, and 92 were checks written to the plaintiff from Beebe, signed by John Sandstedt. Fisher stated that if there was a problem with payment, he would talk to people at J.A.I. or Swanson Enterprises, and that he would take money from anyone who wanted to pay his bill. He did not recall ever receiving a check from J.A.I. other than perhaps one to cover some transportation expenses. Exhibit 96 was a check dated March 20, 1970, from J.A.I. to the plaintiff. Exhibits 91, 93, and 95 were checks from J.A.I. to Beebe.

The plaintiff commenced manufacture of the booths after the contract was entered into. Various problems developed regarding the booths and a letter, dated July 17, 1970, was sent by J.A.I. to the plaintiff advising him to stop production on purchase order 196 until the problems could be resolved. Fisher testified that pursuant to this letter he stopped production.

John Sandstedt testified that in the summer of 1969 he was assistant vice president for Beebe. He stated that exhibit 2 was not a purchase order from Beebe but from J.A.I. who had it specially prepared. He testified that Beebe had an agreement with J.A.I. whereby Beebe would warehouse the merchandise which J.A.I. purchased through its suppliers. This

was done, he stated, because J.A.I. had no separate warehouse facilities of its own. In the case of the plaintiff, however, Sandstedt admitted that the merchandise was shipped directly to the site and would not be processed through Beebe's warehouse. He stated that the purpose of having Beebe's name on exhibit 2 was to implement correct shipments to its warehouse. He stated that there was no written agreement evidencing this warehousing arrangement.

Sandstedt acknowledged writing a number of checks to plaintiff, but stated that in all cases he looked to J.A.I. for payment before he paid the plaintiff. He further testified that Henry Davis was never employed by Beebe or had an office at Beebe.

Darrell Eckardt, assistant treasurer for Beebe, testified that payment from Beebe to Fisher depended upon Beebe's payment from J.A.I. He stated that J.A.I. would forward money to Beebe and authorize Beebe to make payment on merchandise J.A.I. had purchased. He did not know why J.A.I. did not pay directly for the purchases.

Kenneth Shafar, who is engaged in the manufacture of fiberglass products, testified that Fischer contracted with him to produce the fiberglass portions of the booths. He stated that Fisher showed him a copy of exhibit 2 during their negotiations. Shafar testified that he entered into a contract with the plaintiff on the belief that Beebe would be responsible for payment. He stated that he obtained a Dun & Bradstreet report on Beebe before signing the contract. Shafar testified: "I was led to believe, all along, that they [Beebe] would be the ones that would be responsible for the payment." Exhibits 119 and 120 represent the agreement between Shafar and the plaintiff. Exhibit 120, a document from the plaintiff to Shafar states: "It must be clearly understood that any payment from me to you is contin-

gent upon payment from Beebe and Runyan Furniture Company to me."

Shafar testified that he and Fisher went to Beebe's office on one occasion and talked to John Sandstedt about obtaining payment. Sandstedt was surprised that they should be coming to him for payment and told them that they would have to go to J.A.I. for payment.

Exhibits 6, 10, 12, 89, and 92A are invoices from the plaintiff dating from March to July 1970. These invoices show the merchandise listed thereon as "sold to Beebe & Runyan Furniture Co." Exhibit 13 is a letter dated July 16, 1970, from J.A.I. to the plaintiff which states:

"Enclosed is a check drawn by Beebe & Runyan Furniture Company * * * payable to General Manufacturing Company. This amount shall be applied towards *amounts due by Beebe & Runyan Furniture Company to General Manufacturing Company* * * *." (Emphasis supplied.) Exhibit 22 is a letter dated May 13, 1970, from the plaintiff addressed to a Mr. Jack Walker at the office of Beebe. The letter which rejects revised purchase order No. 196 refers to "our contract with you" and states "our contract is with Beebe & Runyan Furniture Company."

Henry Davis testified by deposition. He acknowledged that exhibit 2 was prepared by J.A.I. He stated that he was authorized to sign exhibit 2 and to purchase for Beebe. He testified that he told Fisher that he was to bill Beebe for the restaurant booths. He stated that when buying equipment for J.A.I., "I was representing myself as Beebe and Runyan and also as Johnny's American Inn." He further stated that Beebe was to pay for the booths and that he had no idea how Beebe and J.A.I. were to settle things between themselves.

The record indicates that some relation or interconnection exists between Swanson Enterprises, J.A.I., and Beebe.

We believe the record clearly shows, by an overwhelming preponderance of the evidence, that plaintiff intended to and believed that he was contracting with the defendant Beebe as principal. We find no evidence which would indicate that the plaintiff believed or knew that the defendant Beebe was, during the course of this transaction, acting only as an agent for the defendant J.A.I.

The record shows that the plaintiff looked primarily to Beebe for payment and not to J.A.I. The plaintiff understood that Beebe could not pay him until Beebe was paid by J.A.I. Payment was sought by the plaintiff from J.A.I., and elsewhere, after first contacting Beebe.

It is clear that Beebe's reputation for soundness and reliability was a primary inducement for both the plaintiff's contract and the intervener's contract with the plaintiff. Exhibit 2 bears the letterhead of Beebe and gives no indication of the purported agency. Fisher testified that he was told both by Davis himself and Jim Sandstedt that Davis was authorized to sign the purchase order for Beebe. Davis admitted that he represented himself to Fisher as authorized to sign for Beebe, was in fact so authorized, and instructed Fisher to bill Beebe.

The plaintiff knew that J.A.I. was the ultimate purchaser of the booths. The record indicates that the parties worked closely together on this project, the plaintiff, Beebe, and J.A.I. Under these circumstances the fact that the plaintiff worked with personnel of J.A.I. in formulating the design for the booths; the fact that J.A.I. had to approve the final design and that J.A.I. was to own the design; and the fact that J.A.I. advised the plaintiff to stop production when problems arose and the plaintiff did so are not inconsistent with the plaintiff's position.

The judgment of the District Court dismissing the defendant Beebe from the action was error and is reversed.

Plaintiff's next contention on appeal questions the District Court's award of damages. Plaintiff was awarded damages in the amount of $2,981. Plaintiff questions this figure and also argues that it was entitled to $19,400 amortization costs under the express terms of the contract. We have examined the record and are not clear on the basis for the District Court's determination on damages. We therefore reverse the judgment and remand the cause to the District Court with directions to reexamine the amount of damages due plaintiff, including plaintiff's amortization claim under the contract.

The judgment of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.