**Duane MANN, d/b/a Mann Chemical and Orchard Supply Co., individually and as Trustee, Appellant,**

v.

**WEYERHAEUSER COMPANY, a corporation, Appellee.**

Nos. 82–1431, 82–1488.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1982.

Decided March 15, 1983.

Law Offices of Cobb & Rehm, P.C., Kenneth Cobb and Rodney Rehm, Lincoln, Neb., for appellant.

Kutak, Rock & Huie, Omaha, Neb., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and HARRIS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Duane Mann, d/b/a Mann Chemical and Orchard Supply Co. (Mann), brought this diversity action in Nebraska district court alleging a breach of express and implied warranties under the Nebraska Uniform Commercial Code, Neb.Rev.Stat.U.C.C. (hereinafter cited as U.C.C.) §§ 2–313, 2–314 (Reissue 1980), against Weyerhaeuser Co. for the sale of defective cardboard boxes. Mann brought suit individually and as trustee on behalf of eleven fruit growers who had assigned their claims against Weyerhaeuser to Mann. Before trial, the district court[1] dismissed eight of the fruit growers who claimed damages of less than $10,000. After a bench trial, the district court[2] found that Weyerhaeuser was liable to Mann but that Nebraska law barred recovery by the fruit growers against Weyerhaeuser because of lack of privity of contract. Mann appeals, alleging that the court erred in applying Nebraska law. Weyerhaeuser cross-appeals, alleging that the court erred in awarding Mann damages for lost revenue. For the reasons discussed below, we affirm the judgment of the district court.

Mann is a citizen of Iowa engaged in the business of selling agricultural supplies to fruit growers in the Iowa-Nebraska region. Weyerhaeuser is a corporation organized under the laws of Washington engaged in the manufacture and sale of corrugated cardboard boxes. The boxes at the center of this dispute were manufactured by Weyerhaeuser at its Omaha, Nebraska, manufacturing plant.

In July 1977 Mann placed an order for 71,000 cardboard boxes with Stone Corrugated Container Corporation (Stone), a St. Louis, Missouri, firm. Mann specified that the boxes were to be the "2300" model series constructed with a test weight of 275 pounds and water resistant adhesive. The boxes were also to be imprinted with the names and addresses of the fruit growers who had already placed orders for the boxes with Mann. Because of a labor dispute, Stone could not fill the order and contacted a St. Louis independent jobber who in turn contacted the general manager of Weyerhaeuser's Nebraska plant. The jobber authorized Weyerhaeuser to manufacture 71,-000 "2300" model boxes according to Mann's specifications. Unknown to Mann, Weyerhaeuser's general manager reduced the test weight of the boxes from 275 pounds to 250 pounds.

In August 1977 Mann took delivery of the unassembled boxes at the Nebraska plant. Mann then took the boxes to his Iowa warehouse for assembly. As part of the assembly process, Mann glued the box bottoms. Although Mann had wanted the manufacturer to glue the box bottoms, Mann agreed to do so in exchange for an eight cents a

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The late Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

2. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

box credit. After gluing the bottoms of 17,000 boxes, Mann delivered the boxes to his customers. Soon thereafter the fruit growers complained that the bottoms of the boxes collapsed after being filled with apples. In an attempt to alleviate the problem, Mann stapled the bottoms of the remaining boxes and instructed some of the growers to staple over the glued bottoms. Even after the bottoms were stapled, the boxes still did not perform satisfactorily. The growers complained that the boxes became soft in the refrigerated apple coolers. Some of the customers questioned whether the boxes were of 275 pound test weight. Subsequent testing revealed that the boxes were of 250 pound weight.

Although Mann notified Weyerhaeuser of his customers' complaints, having no other source for boxes, Mann ordered 26,000 additional "2300" model boxes from Weyerhaeuser. Mann demanded that the second run of boxes be certified as 275 pound weight. The second run of boxes was also defective; the corners were cracked and the boxes still became limp after a few days in storage. Because of the softness of the boxes, the fruit growers were unable to stack the boxes five or six high in the coolers, as was customary.

The district court found that Weyerhaeuser breached express and implied warranties of fitness. U.C.C. §§ 2–313, 2–314. The court found that the boxes were defective because of a combination of a reduced test weight and lack of moisture resistant adhesive. The court further found that Mann's gluing of the box bottoms did not significantly contribute to the box failure. The court held that Weyerhaeuser was liable to Mann for damages of $15,476.00 but that Nebraska's privity of contract doctrine barred recovery by the fruit growers against Weyerhaeuser.

■ Mann argues that the district court should have applied Iowa law rather than Nebraska law.[3] Iowa has abolished the privity doctrine. Iowa Code Ann. § 554.-2318 (West Supp.1981–1982). A district court sitting in a diversity case must apply the choice of law rules of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Nebraska U.C.C. choice of laws section provides that Nebraska law applies if the transaction in question has an "appropriate relationship" to the forum, absent an agreement to the contrary. U.C.C. § 1–105. Where a transaction has "significant contacts" with the forum state and other states "the question [of] what relationship is 'appropriate' is left to 'judicial decision.'" *Id.* at Comment 3.

Mann argues that Iowa has the most significant contacts primarily because the fruit growers placed their orders for the boxes with Mann in Iowa; the defective boxes were used in Iowa; and Mann and the growers are citizens of Iowa. Weyerhaeuser argues that the district court properly applied Nebraska law because the boxes were manufactured in Nebraska; the contract was formulated in Nebraska; the judgment would be paid from funds of the Nebraska plant; and most importantly, the parties contemplated that Nebraska law would apply.[4] Given these contacts with Nebraska, this court finds no error in the application of Nebraska law.

■ In the alternative, Mann argues that even assuming Nebraska law applies, the district court erred in its interpretation of Nebraska's privity of contract doctrine. In applying the privity doctrine as a bar to recovery by the growers, the district court noted that while privity was disfavored, the Nebraska Supreme Court had not yet abolished the doctrine, *citing Hawkins Construction Co. v. Matthews Co.*, 190 Neb. 546,

3. The Uniform Commercial Code is silent on whether a remote buyer can recover from a seller for economic injury. The Code was not "intended to enlarge or restrict the developing case law on whether the seller's warranties, given to the buyer who resells, extends to other persons in the distribution chain." U.C.C. § 2–318, Comment 3.

4. It was only during the closing moments of trial that Mann suggested Iowa law should apply.

209 N.W.2d 643 (1973), and that under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it would be improper for a federal district court to do so. In *Hawkins* the Nebraska Supreme Court allowed a lessee who relied on representations in a manufacturer's promotional literature to recover against the manufacturer, holding that a "manufacturer or seller may be held liable under such an advertising warranty even though he is not in privity of contract with the purchaser." 209 N.W.2d at 654. Mann argues that *Hawkins* should be read broadly to allow claims by purchasers against remote sellers. Weyerhaeuser argues that *Hawkins* should be confined to situations where a buyer deals directly with a remote seller or relies on express warranties contained in promotional literature disseminated by the seller. The district court found that Weyerhaeuser's restricted reading of *Hawkins* was in accord with the Nebraska Supreme Court's most recent discussion of privity in *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981). In *Koperski* the court held an automobile manufacturer liable to a remote purchaser who had been given the manufacturer's express warranties. The *Koperski* court noted that " 'privity is a doctrine in hasty retreat; its current vitality is largely in cases in which plaintiffs seek recompense for economic loss.' " 302 N.W.2d at 664 (citation omitted).[5] This court must give deference to the interpretation of state law by a district judge sitting in the forum state, *Zrust v. Spencer Foods, Inc.*, 667 F.2d 760, 764 (8th Cir.1982), and we do so here. In this case it is undisputed that the fruit growers had no direct contact with Weyerhaeuser nor ever read any Wey-

erhaeuser promotional literature concerning the boxes.[6]

The district court found that Mann was entitled to recover the following damages from Weyerhaeuser:

| (1) | Overcharges | $8,164.00 |
| (2) | Credit for repairing cracked corners on second run boxes | 2,860.00 |
| (3) | Past lost revenue (allowable credits given to fruit growers) | 4,452.00 |
| | Total | $15,476.00 |

Weyerhaeuser does not contest the award of $2,860 as a credit for the second run of boxes or the $8,164 as an overcharge; the overcharge represents the difference in value between 97,000 275 pound water resistant boxes (the boxes for which Mann contracted) and 97,000 250 pound non-water resistant boxes (the boxes Mann received). U.C.C. § 2–714(2).

Weyerhaeuser, however, challenges the district court's award of $4,452 as past lost revenue attributable to credits Mann gave three customers on account of their dissatisfaction with the boxes. Mann testified that he gave the Martin Orchard a credit of five cents a box as compensation for the cost of stapling over the glued box bottoms and that he gave credits to the Sheppard Orchard and Small Orchard in order to settle their accounts. The two orchards refused to pay the full amount owing Mann because of their dissatisfaction with the defective boxes. Weyerhaeuser acknowledges that "[w]here the seller of goods has breached a warranty . . . [in addition to difference in value damages] the purchaser may recover consequential damages proximately resulting from the seller's breach." *Shotkoski v. Standard Chemical Manufacturing Co.*, 195

---

**5.** Mann also relies on *Omaha Pollution Control Corp. v. Carver-Greenfield Corp.*, 413 F.Supp. 1069 (D.Neb.1976). In *Omaha Pollution Control* the court suggested that *Hawkins* abolished "vertical" privity to allow a remote buyer to recover against a seller for economic loss. *Id.* at 1088. Weyerhaeuser argues that the *Omaha Pollution Control* court's expansive reading of *Hawkins* is in conflict with the Nebraska Supreme Court's later treatment of privity in *Koperski*, 302 N.W.2d at 664. We agree.

**6.** In light of our holding that the fruit growers are barred by lack of privity from recovery against Weyerhaeuser, we need not decide whether the district court erred in dismissing the claims of the eight fruit growers which did not meet the jurisdictional amount.

On appeal Mann also argues that the fruit growers were in privity with Weyerhaeuser because he was merely acting as the grower's agent. Because Mann did not present this argument to the district court, we do not address it. We note, however, that the argument seems to be without merit.

Neb. 22, 237 N.W.2d 92, 97 (1975); U.C.C. §§ 2–714(3), 2–715.

Weyerhaeuser, however, argues that its breach was not the proximate cause of the credits Mann gave to the fruit growers and suggests that Mann claimed the credits as damages as a means of recouping his box assembly costs. We disagree. The stapling credit and the account settlement credits were caused by Weyerhaeuser's breach. Mann instructed the Martin Orchard to staple the box bottoms in an attempt to strengthen the defective boxes. Mann accepted a reduced amount on the Sheppard and Small accounts because of the fruit growers' dissatisfaction with the defective boxes. As previously noted, the district court found that the boxes were defective because of Weyerhaeuser's breach, not because of Mann's box assembly. There is no suggestion in the evidence that Mann would have given the three credits if not for Weyerhaeuser's breach.

 Nor does the award of past lost revenue in addition to difference in value damages overcompensate Mann. The object of damages is to put the party in the position he would have been in had the contract not been breached. *Michael Todd & Co. v. Lacal Co.*, 583 F.2d 1056, 1058 (8th Cir.1978). The Code specifically provides for recovery of both differential value damages and consequential damages. U.C.C. §§ 2–714(3), 2–715. Profits which would have been made on resale of defective goods are consequential damages which may be recovered, provided that proof of the loss is sufficient. *El Fredo Pizza, Inc. v. Roto Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358, 360, 363 (1978). In this case the overcharge represented the difference in value between the boxes for which Mann contracted and the boxes he received; the overcharge did not include the profits Mann would have made on resale of the 275 pound water resistant boxes to his customers. Because the boxes were defective, Mann lost $4,452 on resale to his customers. The district court's award of lost revenue on resale did not overcompensate Mann.

Weyerhaeuser also argues that the evidence as to the amount of lost revenue was insufficient to support the award. Mann testified he accepted lesser payments to settle the Sheppard and Small accounts and gave the Martin Orchard a five cent a box stapling credit based on Mann's calculation of the cost involved in the stapling. "Damages need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact ... to estimate with a reasonable degree of certainty and exactness the actual damages." *Shotkoski v. Standard Chemical Manufacturing Co.*, 237 N.W.2d at 97. We find the evidence sufficient to support the district court's award of lost revenue attributable to the credits given to the three fruit growers.

Accordingly, the judgment of the district court is affirmed.