DUPLEX MANUFACTURING CO., APPELLANT AND CROSS-
APPELLEE, V. ATLAS LEASING CORPORATION, APPELLEE AND
CROSS-APPELLANT.

146 N. W. 2d 205

Filed November 11, 1966. No. 36318.

Frost, Meyers & Farnham, for appellant.

John W. Delehant, Jr., for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and HASTINGS, District Judge.

McCOWN, J.

This is a contract action in which the plaintiff obtained a jury verdict and judgment for $17,110 for the manufacture of a custom-built mobile feed mill. Thereafter, defendant's alternative motion for new trial was granted, on the basis that the court improperly submitted the question of damages to the jury. Plaintiff appealed and defendant cross-appealed.

The plaintiff, Duplex Manufacturing Co., entered into negotiations with one Elvin Lamb in the fall of 1962, out of which the contract here involved arose. The de-

fendant, Atlas Leasing Corporation, was engaged in the business of financing machinery and equipment acquisitions, under the lease plan. The plaintiff and the defendant entered into the contract for a custom-built mobile feed mill on November 29, 1962. The price was $17,110 cash. The order stated: "This is a custom built Mill especially for Mr. Elvin Lamb to his exact specifications and therefore, this order is non-cancellable." The specifications for the machine included, among its components, "A Metering Device for weighing or metering Grain." Plaintiff commenced the manufacture and assembly of the mill. The feed mill, although not fully completed, was taken to Mr. Lamb's place of business in Missouri on March 9, 1963, for an advertising and promotion project. It was then returned to plaintiff's plant in Omaha, for completion and testing.

On April 5, 1963, an employee of Elvin Lamb came to Omaha; signed a delivery receipt which contained the words "Received and Accepted"; and took the mobile feed mill from plaintiff's plant and drove it to Missouri. There was a conflict in the evidence as to the reasons for the delivery before completion and testing, but the evidence is undisputed that the weighing or metering device was not on the mill at that time, and that both the plaintiff and Elvin Lamb were aware of that fact.

The plaintiff immediately attempted to obtain payment from the defendant, but the defendant refused to pay for the mill until Mr. Lamb certified that the mill had been completed and built to his exact specifications, which Mr. Lamb never did. Meanwhile, after April 5, 1963, representatives of the plaintiff went to Missouri to train Lamb's employees in the use and operation of the machine, and to test it as it was being used in the field. There is sharp conflict in the evidence as to how the machine operated in the field as well as to the reasons for various items of damage to or malfunction of certain components. On May 3, 1963, Lamb had the machine brought to plaintiff's

plant in Omaha and left there. He concurrently advised the plaintiff by letter that he would not accept the machine under any circumstances. The plaintiff's evidence was that the mill was to be returned to the plaintiff on May 3, 1963, for repairs to certain components, and also for installation of the weighing or metering device, which was by then at plaintiff's plant and ready for installation. The mobile feed mill remained at plaintiff's plant thereafter, although the weighing or metering device was never installed on it. This action to recover the full contract price followed.

The jury was instructed that if it found for the plaintiff, "the measure of plaintiff's damage would be the agreed contract price of the grinding mill." The motion for new trial was granted on the basis that this instruction improperly submitted the question of damages to the jury.

It is, of course, the duty of the court to instruct on the proper measure of damages. The evidence was undisputed that the weighing or metering device was never installed on the mill, although it was included in the specifications and in the contract price. There was no testimony as to the cost or market value of the device. There was no testimony concerning the value of the mill minus the metering device, nor was there any testimony as to "the contract rate" which might be applied to the mill minus the metering device.

Where it is clear that a verdict is excessive but there is no method by which the court can rationally ascertain the extent of the excess, a remittitur cannot be properly required since a remittitur would amount only to a substitution of the judgment of the court for that of the jury. See Main v. Sorgenfrei, 174 Neb. 523, 118 N. W. 2d 648. The action of the trial court in granting the motion for new trial was therefore proper.

For its cross-appeal, the defendant urges that it was entitled to a directed verdict or judgment notwith-

standing the verdict. Defendant argues that its liability was specifically conditioned on manufacture to the exact specifications of Lamb, which included a metering device for weighing or metering grain. It relies upon the rule that if a buyer's liability depends upon the seller's performance of a condition which buyer has not waived, the burden is upon the seller to prove performance of the condition before he can recover.

The defendant's contention rests on the assumption that there was no evidence upon which a jury could find a waiver or excuse of the condition. "If a condition in a contract is excused, the promisor becomes subject to a duty to perform without the existence or occurrence of the condition, but the damages recoverable for breach of the duty are not always the same as they would have been if the condition existed or occurred." Restatement, Contracts, § 294, p. 436. Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise, the duty of such other party becomes independent of performance of the condition or promise. See Restatement, Contracts, § 306, p. 451.

In this case, while it was in conflict, there was evidence from which a jury might find that Lamb had accepted the mill with knowledge of a nonconformity. Even though it be assumed that acceptance was on the assumption that the nonconformity would be seasonably cured, Lamb's subsequent manifestation of complete repudiation should not compel the plaintiff to perform a useless act. There is no evidence that the plaintiff could not or would not have installed the weighing and metering device had there been no repudiation. Nor is there proof that the mill would not operate or was not a commercial unit without the weighing and metering device. The facts upon which the legal issues of excuse, waiver, and failure to perform conditions turn are for determination by the jury. The defendant's

cross-appeal therefore cannot be sustained.

The action of the trial court was correct and is affirmed.

AFFIRMED.