DUPLEX MANUFACTURING CO., A CORPORATION, APPELLANT, v. ATLAS LEASING CORPORATION, A CORPORATION, APPELLEE.

166 N. W. 2d 732

Filed April 11, 1969. No. 37062.

Frost, Meyers and Farnham, for appellant.

John W. Delehant, Jr., and Robert J. Huck, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, SMITH, McCOWN, and NEWTON, JJ., and KOKJER, District Judge.

McCOWN, J.

This is an action to recover the contract price for the manufacture of a custom-built mobile feed mill. The

jury returned a verdict for the defendant on plaintiff's petition, and against the defendant on defendant's cross-petition. The plaintiff has appealed from the overruling of its motion for new trial and there is no cross-appeal.

This is the second appearance of this case in this court. See Duplex Mfg. Co. v. Atlas Leasing Corp., 180 Neb. 851, 146 N. W. 2d 205.

The plaintiff, Duplex Manufacturing Company, entered into negotiations with Elvin Lamb in the fall of 1962, out of which this contract arose. The defendant, Atlas Leasing Corporation, was engaged in the business of financing machinery and equipment acquisitions. Duplex suggested to Lamb that he visit with Atlas for purposes of financing the purchase. Arrangements for Atlas to buy the mill and lease it to Lamb were made. Duplex and Atlas entered into the contract for the custom-built mobile feed mill on November 29, 1962. The price was $17,110 cash. The order stated: "This is a custom built Mill especially for Mr. Elvin Lamb to his exact specifications and therefore, this order is non-cancellable." The specifications for the machine included among its components, "a metering device for weighing or metering grain." Duplex commenced the manufacture and assembly of the mill. The feed mill, although not fully completed, was taken to Mr. Lamb's place of business in Missouri on March 9, 1963, for an advertising and promotion project arranged by Duplex. It was then returned to the Duplex plant in Omaha for completion and testing.

On April 5, 1963, an employee of Elvin Lamb came to Omaha; signed a delivery receipt which contained the words "received and accepted"; and took the mobile feed mill from the Duplex plant and drove it to Missouri. There was a conflict in the evidence as to the reasons for delivery before completion and testing, but the evidence is undisputed that the weighing or metering device was not on the mill at that time; and that both Duplex and Elvin Lamb were aware of that fact.

Duplex immediately attempted to obtain payment from Atlas, but Atlas refused to pay for the mill until Mr. Lamb certified that the mill had been completed and built to his exact specifications which Mr. Lamb never did.

Meanwhile, after April 5, 1963, representatives of Duplex went to Missouri to train Lamb's employees in the use and operation of the machine and to test it as it was being used in the field. There is a sharp conflict in the evidence as to how the machine operated in the field as well as to the reasons for various items of damage to or malfunction of various components of the feed mill.

Duplex' evidence was that the malfunctioning and damage was due to the inexperience of Lamb's employees and their poor handling and operation of the mill. The evidence of Atlas and Lamb was that the malfunctioning and damage was due to the failure to conform to specifications, and to faulty material and workmanship by Duplex. Lamb had instructed Atlas not to pay for the mill until the machine was complete and worked according to the warranties.

On May 2 or 3, 1963, Lamb had the machine brought to the Duplex plant in Omaha and left there. He concurrently advised both Duplex and Atlas that he would not accept the machine under any circumstances. Duplex' evidence was that the mill was to be returned to it on May 3, 1963, for repairs to certain components and also for installation of the weighing and metering device, which was then at its plant and ready for installation. The mobile feed mill remained at the Duplex plant thereafter, although the weighing or metering device was never installed on it.

Duplex contends that the issue of acceptance should not have been submitted to the jury because it was uncontroverted on the evidence. Duplex also contends that section 69-419, Rule 4 (1) of the Uniform Sales Act, then in effect, applied. Rule 4(1) provided: "Where there is a contract to sell unascertained or future goods

by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

It is uncontroverted in this case that the feed mill never had installed on it the weighing and metering device which was an essential element of the description of the goods. Under a contract to manufacture goods according to specifications, where the completed goods do not correspond to the contract requirements, there is no transfer of title to such goods under section 69-419, Rule 4(1), R. R. S. 1943. See Inland Products Corp. v. Donovan, Inc., 240 Minn. 365, 62 N. W. 2d 211, at page 220. On the issue of the intention of the parties and whether or not there was an acceptance, the evidence was in direct conflict and the issue was properly submitted to the jury.

Duplex also contends that Lamb should not have been allowed to return the mill and, on behalf of Atlas, rescind the contract, pursuant to section 69-469, (1) (d) and (3), R. R. S. 1943, because the mill was badly damaged. Section 69-447 (1), R. R. S. 1943, provided: "Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." Duplex' position is that the time from April 5 to May 3 was too long to be reasonable, even though Duplex' representatives were endeavoring to repair the feed mill and have it operate as warranted during a large part of that time. The purchaser of personal property, under an implied warranty, has a reasonable time to test the same to ascertain whether or not it is as warranted, and ordinarily this would be a question for the jury. Von

Dohren v. John Deere Plow Co., 71 Neb. 276, 98 N. W. 830. The determination of what was a reasonable amount of time here was for the jury, and the trial court properly submitted the issue to the jury.

Duplex also assigns as error that the court failed to submit the proper measure of damages by excluding consideration of its claim for loss of credit and damage to manufacturing reputation, allegedly caused by Atlas' failure to pay the purchase price. The particular need of a seller for the money due is not a proper element of damage. See, Scheer v. Nelson, 113 Neb. 821, 205 N. W. 250; 46 Am. Jur., Sales, § 622, p. 754.

Some assignments of error are directed generally to omissions or errors in the instructions as a whole, but neither the motion for a new trial nor the assignments of error specify by number the alleged erroneous instructions. Instructions objected to must be specifically designated by number in a motion for a new trial in order for such alleged error to be considered on appeal. Otherwise, such instructions will be taken as the law of the case. Robinson v. Meyer, 165 Neb. 706, 87 N. W. 2d 231; Law v. Gilmore, 171 Neb. 112, 105 N. W. 2d 595.

When the evidence is conflicting, the verdict of a jury will not be set aside unless it is shown to be clearly wrong. Schimonitz v. Midwest Electric Membership Corp., 182 Neb. 810, 157 N. W. 2d 548.

The judgment of the district court was correct and is affirmed.

AFFIRMED.