FRATERNAL ORDER OF POLICE, LODGE NO. 2, APPELLEE, v.
THE COUNTY OF DOUGLAS, NEBRASKA, APPELLANT

612 N.W. 2d 483

Filed June 23, 2000.    No. S-99-982.

James S. Jansen, Douglas County Attorney, and Bernard J. Monbouquette for appellant.

Thomas F. Dowd, of Dowd & Dowd, Attorneys at Law, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This case presents an issue of law as to whether a 1995 amendment to the Douglas County Employees' Retirement Plan resulted in a reduction in benefits which, pursuant to the plan, could be accomplished only with the approval of the electorate. The district court for Douglas County resolved this question in the affirmative and ordered that the amendment be stricken and set aside because it had not been submitted to and approved by the voters of Douglas County. Upon consideration of the appeal by Douglas County (County) from this order, we find no error and affirm.

## BACKGROUND

The facts relevant to the controversy are undisputed. As amended through January 1, 1989, the Douglas County Employees' Retirement Plan (the Plan) provided in part as follows:

> 5.8 Disability Pension. After six calendar months of total disability, an employee with at least five years of service shall be entitled to benefits in the amount of 70% of his compensation on the July 1 preceding disability. In the computation of this percentage, Social Security and workers' compensation payments shall be included in the initial computation. However, subsequent adjustments in such Social Security and workers' compensation payments after the commencement of a member's disability income payments will not reduce the amount of disability pension payable under this Plan.
>
> . . . .
>
> 12.1 Amendment and Termination. The County expects the Plan to be permanent; but since future conditions affecting the County cannot be anticipated or foreseen, the County must necessarily and does hereby reserve the right to amend or modify the Plan at any time by the action of

the Board of County Commissioners, except that the Plan may not be discontinued or terminated and the benefits provided by the Plan may not be reduced without approval of a simple majority of the voters of Douglas County in a regular primary or general election of the County.

Prior to July 1, 1995, two county employees eligible for disability pensions under the Plan challenged the County's attempt to offset their pensions by the amount of Social Security benefits received by their dependents. The County elected not to contest these challenges and refunded the money which it had attempted to offset. In four other cases where the affected employees did not object, the County offset disability pension benefits by the amount of Social Security benefits received by the employees and their families.

Effective July 1, 1995, the County amended § 5.8 of the Plan by adding the following language:

> For this purpose, Social Security includes Social Security disability payments to a member, spouse or family members that result from the member's disability. Social Security also includes for this purpose Social Security retirement payments of a disabled member that are payable to that member, their spouse or family members if the member elects to receive a Social Security retirement payment in lieu of a Social Security disability payment.

The County concedes that this amendment was in reaction to its previous attempts to offset dependents' Social Security benefits from disability pensions and its decision not to contest the challenges to the attempted offsets by two affected employees. The 1995 amendment to the Plan was not submitted to a vote of the county electorate.

This declaratory judgment action was commenced in 1998 by the Fraternal Order of Police, Lodge No. 2 (FOP), a labor organization which represents a bargaining unit of Douglas County deputy sheriff employees who are enrolled in and covered by the Plan. Alleging that the County, through its agent, had stated its intent to deduct Social Security benefits paid to dependents from the disability pension of one of its members pursuant to § 5.8 of the Plan as amended in 1995, FOP contended that the

amendment was void ab initio because it had not been approved by a majority of voters as required by § 12.1 of the Plan. FOP prayed for a judgment declaring that the 1995 amendment should be set aside and declared null and void. The County filed an answer consisting of a general denial and moved for summary judgment. FOP filed a cross-motion for summary judgment. The district court conducted a hearing and determined that there was no genuine issue as to any disputed fact. It sustained FOP's cross-motion for summary judgment and denied the County's motion based upon its determination that

> the amendment of July 1, 1995, to Section 5.8 of the Douglas County Employees' Retirement Plan constitutes a reduction which required the approval of a simple majority of the voters of Douglas County in a regular primary or general election of the County and that the disabled members represented by the Plaintiff are entitled to disability benefits from the plan without an offset for Social Security disability benefits or workers' compensation benefits received by their spouse and/or family members on account of such disability and that the amendatory language to Section 5.8 of the plan should be stricken and set aside.

The County perfected this timely appeal, which we removed to our docket pursuant to our authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

The County contends on appeal that the district court committed reversible error in finding that the amendatory language of § 5.8 was a "reduction in plan benefit" for purposes of § 12.1 of the Plan and, therefore, erred in granting summary judgment for FOP.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as

a matter of law. *Callahan v. Washington Nat. Ins. Co., ante* p. 145, 608 N.W.2d 592 (2000); *Schrader v. Farmers Mut. Ins. Co., ante* p. 87, 608 N.W.2d 194 (2000).

■ Where the facts are undisputed or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the trial court to decide the question as a matter of law rather than submit it to the jury for determination. *Smith v. Paoli Popcorn Co.*, 255 Neb. 910, 587 N.W.2d 660 (1999).

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997); *McDonald's Corp. v. Goler*, 251 Neb. 934, 560 N.W.2d 458 (1997).

## ANALYSIS

The County argues that the amendatory language is a clarification, not an addition of a new offset, and that the amendment does not constitute a reduction in benefits because the "benefit" remains at 70 percent of an employee member's compensation and that only the source of the payment changed. The County contends that it has always followed the practice and understanding that Social Security benefits include benefits received by the member, the member's spouse, and the member's dependents. The County argues that it intended that disability payments made through the Plan would supplement the Social Security benefits received by the member and the member's family but would not duplicate such benefits. The County contends that the Plan member employees know or should know that if a member becomes totally disabled, Social Security will send disability benefits not only to the member, but also to the member's spouse and dependents.

■ As the County acknowledges in its brief, the Plan is a contract between the County and its employees. To resolve the issue raised in this appeal, we must therefore look to the contract itself. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Callahan v. Washington Nat. Ins. Co., supra; American Family Ins. Group v.*

*Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Ray Tucker & Sons v. GTE Directories Sales Corp., supra.* A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Callahan v. Washington Nat. Ins. Co., supra*; *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997); *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996). A contract which is written in clear and unambiguous terms is not subject to interpretation or construction; rather, the intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995); *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995). The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997); *McDonald's Corp. v. Goler*, 251 Neb. 934, 560 N.W.2d 458 (1997).

We find no ambiguity in the 1989 version of the Plan. It contains no language stating or even suggesting that Social Security benefits paid to a member's spouse or dependents would be applied as an offset in calculating the member's disability benefits payable under the Plan. In contrast, the 1995 version clearly provides that such amounts will be included in the amount offset against the benefit calculated on the basis of 70 percent of the employee's compensation on the July 1 preceding the disability. Thus, the 1995 amendment plainly enlarged the class of permissible offsets against the 70-percent benefit by expanding it to include Social Security benefits received by the employee member's spouse and dependents.

Likewise, it is clear from the language of both versions of the Plan that offsets operate to reduce the amount of the benefit payable under the Plan. Each version of the Plan is set forth in a booklet which includes the full text of the Plan itself, preceded by a section in question-and-answer format which, according to the introductory section of each booklet, "describes the main

provisions of the Plan in what is hoped to be understandable terms." The booklets provide that any conflict between the explanatory section and the text of the Plan will be governed by the latter. The explanatory section of the 1989 Plan booklet includes the following:

**HOW MUCH DISABILITY PENSION WILL I RECEIVE?**

The amount of your disability pension will total 70% of your basic monthly earnings rate on July 1 before you became disabled to a maximum of $3,000 per month. Your disability benefit will include any payments *you receive* from Social Security . . . .

(Emphasis supplied.) The corresponding provision in the 1995 Plan booklet states:

HOW MUCH DISABILITY BENEFITS WILL I RECEIVE?

The amount of your disability benefits will total 70% of your basic monthly earnings rate on July 1 before you became disabled to a maximum of $4,800 per month. *This benefit will be reduced by any payments* you *or your family members* receive from Social Security as a result of your disability . . . .

(Emphasis supplied.) These explanatory provisions do not conflict with the corresponding provisions of each Plan, but, rather, reflect their plain meaning. Consistent with the language of § 5.8 of the 1989 Plan, the Plan booklet explains that Social Security benefits paid to the employee ("payments you receive") are included in the 70-percent disability benefit and thus may be applied as an offset in determining the amount payable under the Plan. Likewise, consistent with the language of § 5.8 of the 1995 Plan, the Plan booklet explains that the 70-percent benefit "will be reduced" by Social Security payments received by the employee or his or her family members.

We have stated that " 'the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence.' " *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 769, 545 N.W.2d 714, 722 (1996), quoting *Nowak v. Burke Energy Corp.*, 227 Neb. 463,

418 N.W.2d 236 (1988). The explanatory language utilized in each Plan booklet demonstrates that the County construed the language of § 5.8 of the Plan prior and subsequent to the 1995 amendment precisely as it was construed by the district court.

We reach the same result on the basis of our independent review of this question of law. The 1995 amendment expanded the class of Social Security payments which could be offset against the 70-percent disability pension benefit by including payments received by the spouse and family of the employee. This necessarily resulted in a reduction of the benefits which would have been payable prior to the amendment. The amendment required but did not receive approval by the voters of Douglas County pursuant to § 12.1 of the Plan and is therefore void.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in determining as a matter of law that the amendatory language contained in § 5.8 of the 1995 Plan constitutes a reduction in the Plan benefits which may not be implemented because the amendment was not approved by a simple majority of voters in Douglas County in a regular primary or general election, as required by the Plan. The judgment of the district court is affirmed.

AFFIRMED.