STAN SMITH, APPELLEE, V. PAOLI POPCORN CO., A NEBRASKA CORPORATION, FORMERLY KNOWN AS MORMAC POPCORN COMPANY, APPELLANT.

618 N.W. 2d 452

Filed September 29, 2000.   No. S-99-764.

Robert E. Wheeler for appellant.

James J. Paloucek, of Norman, Paloucek & Herman Law Offices, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This is an action for damages arising from the alleged wrongful rejection of goods. In the first trial, the court granted summary judgment in favor of Stan Smith (Smith) on the issue of liability. Prior to submitting the issue of damages to the jury, the trial court granted a directed verdict in the amount of $28,542.37. We reversed the judgment and remanded the cause for further proceedings. See *Smith v. Paoli Popcorn Co.*, 255 Neb. 910, 587 N.W.2d 660 (1999). In the second trial, a jury returned a verdict in favor of Smith in the amount of $31,175.19. Paoli Popcorn Co. (Paoli) appeals.

## SCOPE OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State ex rel. Emmack v. Stenberg*, 259 Neb. 1037, 614 N.W.2d 300 (2000).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000).

■ In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken

as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error. *Id.*

■ In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Nguyen v. Rezac*, 256 Neb. 458, 590 N.W.2d 375 (1999).

## FACTS

In March 1994, Smith and Paoli entered into a contract in which Paoli agreed to purchase popcorn grown by Smith during the 1994 growing season for 10 cents per pound. Smith harvested the popcorn in late September or early October 1994. During the harvest, it began to mist, and Smith's son Steve Smith noticed that smut had attached to one of the loads of popcorn.

Tom Harmon, an agent of Paoli's, visited the grain bins to which the popcorn was delivered on the day of the harvest. Harmon took two samples of the popcorn, one about a foot below the surface of the bin and the second at a greater depth. In the process of taking those samples, Harmon noticed smut attached to the kernels. It was Harmon's belief that the smut could not be cleaned off and that, therefore, the popcorn would be difficult to market. While at the site, Harmon had a discussion with Rob Smith, another of Smith's sons. Although Harmon expressed concerns with the quality of the popcorn, he did not reject the popcorn at that time. Instead, Harmon conveyed that he intended to try to market the popcorn as best he could.

From the time the popcorn was harvested until early April 1995, the parties had several discussions regarding its marketability. On April 4, 1995, Harmon called Smith and rejected the popcorn. Two days later, the rejection was formalized by a letter from Paoli to Smith.

Paoli claims that after it rejected the popcorn, it offered to pay 8 cents per pound for the popcorn plus interest and storage, and that this offer was rejected by Smith. Steve Smith does not recall Paoli making this offer.

After Smith received the letter of rejection, he and Steve Smith attempted to resell the popcorn. Steve Smith testified that he contacted several popcorn companies that were likely to be in the market for popcorn. If a company showed any interest at all, Steve Smith sent them a sample of the popcorn and requested a bid. He sent these companies the "worst part" of the popcorn because "[t]hey weren't interested in seeing what the best [was], they wanted to know what the worst was." When the samples were sent, Steve Smith also informed the companies that most of the popcorn was fine.

Bids of 5 cents per pound were obtained from three separate companies. These 5-cent bids were communicated to Paoli, which responded with a bid of 5.25 cents per pound. Smith relayed Paoli's 5.25-cent offer to the three companies, but only Colorado Cereal, Inc., showed further interest by offering 6 cents per pound. This offer was communicated to Paoli, which offered 6.25 cents per pound. Smith agreed to accept this offer if he could retain the right to collect the difference between the contract price of 10 cents per pound and the current bid of 6.25 cents and if Paoli would pay the balance by certified check. Paoli refused, and in May 1995, Smith sold the popcorn to Colorado Cereal for 6 cents per pound.

Smith sued Paoli for wrongful rejection of the popcorn, seeking damages for the reduced price of the popcorn, storage fees, and interest. Smith died in September 1996, and the action was subsequently revived by Steve Smith, the personal representative of Smith's estate.

In the first trial, the court granted summary judgment for Smith on the issue of liability, finding that Paoli had ineffectively rejected the goods. The court subsequently granted a directed verdict in the amount of $28,542.37. We reversed the judgment and remanded the cause for further proceedings, finding that a genuine issue of material fact as to whether Paoli rejected the goods within a reasonable time precluded summary judgment. See *Smith v. Paoli Popcorn Co.*, 255 Neb. 910, 587 N.W.2d 660 (1999).

On remand, the trial court granted Smith's motion for directed verdict on the issue of the commercial reasonableness of the resale. The jury subsequently returned a verdict in favor of Smith in the amount of $31,175.19, and Paoli appeals.

## ASSIGNMENTS OF ERROR

Paoli asserts, summarized and restated, that the trial court erred (1) in directing a verdict in favor of Smith on the issue of the commercial reasonableness of the resale and (2) in giving and refusing to give certain jury instructions.

## ANALYSIS

On remand, the issues presented were whether Paoli effectively rejected the popcorn; whether Smith acted in good faith and in a commercially reasonable manner in reselling the popcorn; and what damages, if any, to which Smith was entitled. The trial court determined as a matter of law that Smith acted in a commercially reasonable manner, and the remaining issues were submitted to the jury.

On appeal, Paoli first argues that the trial court erred in directing a verdict that Smith resold the popcorn in a commercially reasonable manner. A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000). The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Id.* On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State ex rel. Emmack v. Stenberg*, 259 Neb. 1037, 614 N.W.2d 300 (2000).

Paoli contends that Smith did not act in a commercially reasonable manner because Smith (1) sent samples of the "worst part" of the popcorn to potential buyers, (2) denied Paoli an independent sampling of the popcorn after Paoli's rejection, (3) refused Paoli's offer of 6.25 cents per pound, (4) sold the popcorn for 6 cents per pound, and (5) asked one of the potential buyers for a bid for "low quality type popcorn" in order to give Smith leverage in dealing with Paoli. Brief for appellant at 13-14.

The phrase "commercially reasonable" is not specifically defined in Neb. U.C.C. § 2-706 (Reissue 1992). Assuming a

buyer has wrongfully rejected goods, § 2-706 provides that where resale is made in good faith and in a commercially reasonable manner, the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed. Section 2-706(2) requires that every aspect of the sale, including the method, manner, time, place, and terms, must be commercially reasonable.

We conclude that the trial court did not err when it determined as a matter of law that Smith resold the popcorn in a commercially reasonable manner. Upon notification that the popcorn was rejected, Steve Smith contacted several companies which were in the business of purchasing popcorn from farmers. Three bids were received for 5 cents per pound. These bids were communicated to Paoli, which then offered 5.25 cents per pound. Colorado Cereal increased its offer to 6 cents per pound, and this bid was communicated to Paoli. Paoli then offered to pay 6.25 cents per pound, which Smith was willing to accept if Paoli would agree that the sale would not preclude Smith from pursuing any additional remedies he might have under the contract. Paoli refused to agree to these terms, and Smith sold the popcorn to Colorado Cereal.

With regard to the method and manner used by Smith to resell the popcorn, Harmon stated that if he were a farmer selling popcorn, he would call different popcorn companies to see if they were bidding. If they were, he would provide samples and would then get bids and negotiate for the best price. This method was similar to the one used by Smith in negotiating the sale to Colorado Cereal. Harmon also testified that short of directly marketing the popcorn, there was nothing else a farmer could do to sell the product.

With regard to the price ultimately obtained by Smith, Bernard Blach, an agent for Colorado Cereal, testified that 6 cents per pound was a fair value for Smith's popcorn and that the price paid to Smith ended up being more than Colorado Cereal had paid other producers for popcorn in the same time period. He also testified that the transaction between Smith and Colorado Cereal was made in good faith and in a commercially reasonable manner. Furthermore, Dennis Kunnemann, who had been involved in selling and processing popcorn in the Imperial,

Nebraska, area for 13 to 14 years, stated that the market price for popcorn in the area during the summer of 1995 was 6 to 7 cents per pound. Even Paoli's agent, Harmon, testified that if there had been a market for less than premium popcorn in the fall of 1994 through the winter of 1995, the price would have been 3 to 4 cents per pound. In addition, a letter from the president of Paoli to Smith dated April 18, 1995, indicated that 8 cents per pound was substantially more than the market price.

Paoli also argues that Steve Smith did not act in a commercially reasonable manner by sending potential buyers samples of the "worst part" of the popcorn. Steve Smith testified that this was the part of the crop the companies wanted to see. He also told the companies that the sample reflected one truckload placed on the top of the bin and that the rest of the popcorn was fine.

Paoli further contends that Smith's asking for a bid for "low quality type popcorn" was not commercially reasonable. It is undisputed that this bid was conveyed to Paoli, which then submitted another bid.

Giving every reasonable inference to Paoli, we conclude as a matter of law that Smith's actions in reselling the popcorn were commercially reasonable and that the trial court did not err in directing a verdict on this issue.

Next, Paoli argues that the trial court erred in refusing to give certain requested jury instructions. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000). In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error. *Id.*

First, Paoli asserts that the trial court erred in refusing to give requested instructions Nos. 13, 19, and 21. Requested instruction No. 13 stated: "Reasonableness of notice must be deter-

mined in the light of the entire conduct of the parties." Requested instruction No. 19 read as follows:

Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

Reasonable time for rejection depends upon the circumstances surrounding the action.

No specific words are required to effect rejection, except that a rejection must make clear to the seller that the goods are not acceptable under the contract.

Requested instruction No. 21 provided: "Rejection can be inferred from the circumstances."

The trial court gave the following instruction with regard to rejection:

Rejection of the corn as nonconforming must be within a reasonable time after the corn had been delivered to the bin. The rejection is ineffective unless the buyer notifies the seller of that rejection within a reasonable period of time and in order to be effective the notice of rejection must be made in a clear and unambiguous fashion.

What is a reasonable time for making rejection of the corn depends upon the circumstances surrounding this case. Whether the time taken by the buyer to reject the goods in this particular case is reasonable and whether the notice is reasonably given often depends upon the time the buyer needs to discover that the goods do not conform to the contract.

If the buyer does not make an effective rejection because it failed to reasonably notify the seller of the rejection of goods within a reasonable time after delivery, or a notification of rejection is not made in a clear and unambiguous fashion, the goods are deemed to have been accepted by the buyer.

Under the instructions as given, the jury was permitted to determine whether Paoli had made an effective rejection within a reasonable period of time. The evidence showed that Paoli formally rejected the popcorn by letter of April 6, 1995. The instructions given by the trial court stated that both Smith and Paoli admitted, and the court determined as a matter of law, that

the popcorn harvested contained smut that affected its marketability. The court instructed the jury that Paoli denied that it breached the contract in any fashion; denied that it failed to, within a reasonable time, reject the popcorn; and denied that the popcorn which Smith offered to Paoli under the contract conformed to specifications and conditions required under the contract. With the instructions given by the court, the jury was permitted to determine whether Paoli had rejected the popcorn within a reasonable time and whether the popcorn offered by Smith to Paoli conformed to the specifications and conditions required under the contract.

We conclude that Paoli was not prejudiced by the trial court's refusal to give requested instructions Nos. 13, 19, and 21. The court's instructions, when taken as a whole, correctly stated the law, were not misleading, and adequately covered the issues set forth by the pleadings and supported by the evidence.

Next, Paoli argues that the trial court erred in refusing to give requested instruction No. 11 on good faith: "In order to recover damages the seller must act 'in good faith and in a commercially reasonable manner' in making the resale. This standard is more comprehensive than just 'reasonable care and judgment.' Failure to act properly deprives the seller of damages from the resale." Paoli also requested the following instruction, which states in part: "The premise of good faith is that each party will make an effort which is honest in fact to meet the terms and spirit of the performance and enforcement of obligations."

Instead, the trial court instructed: "Good faith means honesty in fact in the conduct or transaction concerned." Paoli argues that this broad definition of good faith was insufficient in that the jury should have also been instructed on the consequences of failing to resell in good faith. Paoli claims that Smith did not make an effort to comply with the terms of the contract. Section 2-706(1) provides: "Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this article . . . ."

The trial court determined as a matter of law that the sale was made in a commercially reasonable manner but left the issue of

whether the sale was made in good faith to the jury for its determination. At the instruction conference, the court requested Paoli's counsel to point out any evidence of bad faith that existed prior to the date of rejection. Counsel did not provide any evidence which could be construed as indicating that Smith had not acted in good faith prior to the formal rejection by Paoli.

The evidence showed that after the formal rejection by Paoli, Smith sent samples of popcorn of the poorest quality to prospective buyers because that was what the buyers were interested in. There were three bids received for 5 cents per pound. Those bids were communicated to Paoli, which offered 5.25 cents per pound. One of the 5-cent bidders, Colorado Cereal, then offered 6 cents per pound. This offer was also communicated to Paoli, which then offered to pay 6.25 cents per pound. Smith agreed to accept this offer if Paoli agreed that the sale would not preclude Smith from pursuing additional remedies against Paoli under the contract. Paoli refused, and the popcorn was then sold to Colorado Cereal for 6 cents per pound. There is no evidence from which the jury could have determined that Smith did not act in good faith in the resale of the popcorn, and Paoli was not prejudiced by the trial court's failure to give its requested instructions.

Paoli also asserts the trial court erred in refusing a requested instruction concerning the burden of proof. The court gave the following instruction:

> Before the plaintiff can recover against the defendant on his claim of breach of contract the plaintiff must prove by the greater weight of the evidence that the defendant breached the contract in one or more of the ways claimed by the plaintiff [and t]hat this breach of contract was a proximate cause of some damage to the plaintiff and the nature and extent of that damage.
>
> If the plaintiff has not met this burden of proof then your verdict must be for the defendant. On the other hand if the plaintiff has met this burden of proof, then your verdict must be for the plaintiff.

The requested jury instruction that Paoli argues does not appear in the transcript or anywhere in the record. In any event, Paoli was not prejudiced by the trial court's instruction on burden of proof.

Finally, Paoli asserts that the trial court erred in giving two separate jury instructions over its objection. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Nguyen v. Rezac,* 256 Neb. 458, 590 N.W.2d 375 (1999).

The trial court instructed the jury that it had determined that Smith resold the popcorn in a commercially reasonable manner. Paoli claims that it was unnecessary to give this instruction because the instruction would confuse the jury as to its finding on good faith. The court had directed a verdict on this issue, and therefore, the court did not err in so instructing the jury.

Paoli also claims that part of the trial court's instruction regarding rejection—"[w]hether the time taken by the buyer to reject the goods in this particular case is reasonable and whether the notice is reasonably given often depends upon the time the buyer needs to discover that the goods do not conform to the contract"—prejudiced Paoli because this language had no relation to the facts of the case because the parties knew about the smut infestation and the popcorn's unmarketable condition from the time of the harvest. Paoli asserts that this instruction created an issue where one did not exist and invited the jury to disregard the circumstances of the parties from the time of harvest to the formal rejection. We find no merit in this argument. The jury was required to determine whether Paoli breached the contract, and rejection was one of the issues to be decided by the jury.

## CONCLUSION

Having found no merit to the assignments of error set forth by Paoli, we affirm the judgment of the district court.

AFFIRMED.